Julmice v. Garland. We'll hear from the petitioner. Good afternoon, Your Honors. May it please the Court, my name is Jennifer Varghese and I represent the petitioner, Mr. Evans Julmice. Your Honors, the primary question in this case is whether the 1227 A1H Immigration Waiver requires a living qualifying relative. And specifically for this petitioner, whether Mr. Julmice's U.S. citizen father had to be alive at the time of waiver adjudication. This Court should hold that Mr. Julmice's father did not have to be alive and that the BIA erred in inserting the additional requirement of this living qualifying relative. Your Honors, by way of brief history, in 2004, Mr. Julmice's father started the process for him to immigrate to the United States under the category of unmarried son. He ultimately immigrated under the unmarried son category in 2010. In 2005, however, Mr. Julmice had married. He was therefore ineligible to immigrate under the unmarried son category. For this lone misrepresentation, Mr. Julmice was placed in removal proceedings in August 2016. His form of relief, his only form of relief was the 1227 A1H waiver, which in relevant part is available to a spouse, parent, son, or daughter of a U.S. citizen or lawful permanent resident. Here, I'd like to mention that practically speaking, the 1227 A1H waiver is one of the more straightforward waivers to obtain in immigration court. Once the qualifying relative is identified, the immigration judge then weighs the equities in a particular alien's case. So, for example, factors such as the alien- I'm sorry, not to cut off your background completely, but to focus just a little bit on where I'm having a little bit of concern. Yes, Your Honor. I understand the is and son part of this, and that seems pretty straightforward. The question that I've got is whether the father remains a citizen after his death. We might think about that in a number of different ways, but there are other provisions of the immigration code that refer to citizenship and include while they're alive or after they're deceased. That's 1443A and 1551B as two examples. That's right. And so can you talk to me for a little bit about why we think citizenship is something that continues after death in the context that we have? And particularly, and I'll just add this because it's part of my concern. You know, when we look at the 14th Amendment, it defines a citizen as a person, right? And then it goes on in the second clause of the 14th Amendment to refer to the allocation of representation to the number of persons in a state. And presumably that doesn't mean dead people. We don't count graves when we allocate people. So I'm just having a little bit of a hard time on whether citizenship extends past death or whether citizenship ends at death. And so while he may be the son of his father, his father, if we will, is no longer a citizen because he's not alive. Help me work through that. Yes, thank you for that question, Judge Richardson. I think to answer that, we can consider other provisions of the INA. So, for example, this is something I was going to jump into a bit down the road in my prepared remarks, but I think now is a good time to bring this up. I had mentioned in my brief that the extreme hardship requirement that is in some waivers but not in this particular waiver meant that there was a stronger argument that the qualifying relative had to be alive in certain waivers but not necessarily this one. And here I'm speaking about the 1182I misrepresentation or fraud waiver and the 1182H waiver having to do with criminal convictions. I will mention that USCIS, the adjudicating arm or the adjudicating agency, has actually held that because of a provision called 204L, which contemplates how to deal with surviving beneficiaries, that in fact, whereas I had argued that you need to have a qualifying living relative for those waivers, as far as the agency's concerned, and this is in 204L, also in 8 U.S. Code Section 1154L, more for purposes of this court today, the provision allows there to be benefits that continue post-death. And so there's an acknowledgment that the qualifying... But help me understand that, right? So that L provision lists a set of circumstances where the petition may adjudicate it, quote, notwithstanding the death of the qualified relative, right? But the problem is the exception you're seeking isn't included in the list of things, I don't believe. So you don't get... It's almost the opposite, right? So that suggests that for those instances, it extends beyond death. But you might argue, I'm not agreeing with it, I'm saying you might argue the negative implication means that that means it doesn't extend for you. And Your Honor, I think there would be credence to that argument, but there is, in the USCIS policy manual, a clause that reads, and I'm quoting directly from the policy manual, excuse me, if the qualifying relative who died is the same qualifying relative to whom extreme hardship must be established, so in other words, the U.S. citizen or lawful permanent resident, USCIS treats the qualifying relative's death as the functional equivalent of a finding of extreme hardship. So here, we're talking specifically about two waivers where even if the qualifying relative, the citizen or LPR, has passed, the beneficiary can still pursue the waiver and the death is actually treated as de facto extreme hardship. So there, there is this understanding that the parent, in this case son, relationship doesn't just continue, but it's recognized that that parent is viewed, or the qualifying relative is viewed, as a U.S. citizen or lawful permanent resident. But, so the problem I've got there is that you don't fall under that, you call it 204L, I thought it was 1151L, but whatever it is, the provision we're talking about, you don't fall within that provision. I mean, you agree that your, you know, waiver provision is not part of, doesn't fall under L, right? I would agree to a certain extent, because USCIS, again, going back to this policy manual, is talking, as your Honor mentioned, about certain petitions. And your Honor listed a few of those earlier. But he's talking about petitions to which, to which... Yes, but the policy manual, but the policy manual goes on to say that the protection that 204L extends, also extends to the waivers that may be required when the beneficiary is pursuing the benefit of the petition that's been filed. So there is an extension... So you're saying that they claim that L applies to things that L itself says it doesn't apply to? L doesn't specifically say it does not apply to waivers, but USCIS extends L to the waivers by virtue of the policy manual. Can I ask you about... Yes. I know Judge Richardson said he understands the son is, you know, continues to be the son. And the Ninth Circuit has said that, and that's true in a very meaningful sense. But I wondered about talking about other provisions of the code. In 1154, there's a provision that talks about someone who is the parent of a citizen or was a parent of a citizen who died in the past two years. And again, that's not dispositive, but it made me start to wonder if, if we can necessarily... that the present tense usage in our statute necessarily transcends death. Because Congress has referred to someone who was a parent of someone who died, was a parent of a citizen. But the implication being, you know, in some sense, they are no longer the parent of a citizen. Now, maybe this goes back to Judge Richardson's question because the person is no longer a citizen in death. But I wondered if that was usage suggests that maybe we shouldn't be assuming too much about is here. Thank you for the question. And actually, Judge Rorschach, I would answer that in part based on my answer to Judge Richardson's question, which is, again, if the adjudicating agency has said that we are acknowledging that qualifying relative may have died, and not only are we extending benefits, but if specific waivers are also needed by the foreign national to obtain the benefit, we are going to find automatically that there was extreme hardship. There was de facto extreme hardship. So then bringing that back to your honors question, I think that also gives support to, in this case, because the focus here is on whether the parent-son relationship, for purposes of this waiver, goes beyond the death of the citizen father here. That the word is there doesn't necessarily have to also be amended, or the clause doesn't have to be amended necessarily here to have the clause refer to a parent that has passed, and to include a parent that has passed. The parent that has passed is contemplated overall in the phrasing of the waiver. Again, being eligible to an alien who is the spouse, parent, son, or daughter of a U.S. citizen. Can I explore for a minute what is before us and what we can and cannot even decide in this case? Do you agree with me that in both this case and in the precedential opinion they relied on, the BIA didn't discuss and certainly didn't decide the case based on the idea that the dead parent is no longer a citizen? As I read both of those decisions, their interpretation is entirely based on the meaning of, is the child of. Is that your reading of those cases? That is, and your honor, I think if we again look at the language at issue here, waiver of course being available to an alien who is the spouse, parent, son, or daughter, and then of the citizen or LPR. So to that extent I don't have an issue so to speak with the emphasis by the board. It's just the analysis based on ignoring the plain language and looking at the evolutionary history and the case law was done incorrectly by the board. That's our position. So I guess what I'm saying is maybe you're right, maybe you're wrong about whether after the parent is dead, the parent is still a U.S. citizen and I think, I don't know what I think the answer to that is. But what's pretty clear to me is that that's not the ground in which the agency decided this case. So I'm not sure under Chenery how he could affirm the agency's decision on a ground the agency didn't rely on. Do you agree with that? Your Honor, I think since this case was based on the precedential of Matter of Federico, and Matter of Federico without qualification came forth and said that there must be a living qualifying relative, this court can focus on that here in the context of the alien being the son of the U.S. citizen parent. So for our desired outcome, which is we would like this court to hold that Mr. Jolmes' father did not have to be alive for waiver adjudication purposes, I think the court can focus on the exact holding of Matter of Federico and analyze this per Chevron and find that just based on Chevron step one, the language is clear and unambiguous on its face. Can I follow up on that? Yes. I read Federico, you know, it doesn't identify what ambiguity. We often think about, you know, agencies identifying an ambiguity and then providing a reasonable construction of it. Federico doesn't identify what part of this provision is ambiguous, right? It just says that it's interpreting this provision and then it immediately goes to sort of policy, right? It's a reasonable way to choose among outcomes if there's ambiguity. But it sort of assumes the ambiguity question, doesn't it? Right. And so in that sense, we can't narrate and say, oh, they only talk about this ambiguity as opposed to that ambiguity. They just said the entire thing is ambiguous and therefore immediately to policy. Right. Yes, Your Honor. I frankly, I find it quite shocking that the actual language of the statute is wholly ignored. And I actually find faulty the board's assessment of the evolutionary history of the waiver specifically here. I see I don't have much time left, but specifically the issue I have there is that if anything, the congressional evolution or evolution of the waiver shows that when it moved, for example, from being eligible or available to a child, to a son or daughter, when it changed from being a mandatory waiver to a discretionary one where only the AG can decide whether the policy underlying it can be granted. All of these are substantive amendments, if you will, that evidence Congress did contemplate and did make this waiver eligible to an alien whose parent has died. And I do see here my my time is up. We'll be happy to hear from you again in just a minute. Thank you, Your Honor. Counsel. Good afternoon, Your Honor. Spencer Shukart, the attorney general. May it please the court. Based on what I've heard from everyone in that opening segment, I'm going to presume that I'm going to be disagreeing with everyone, which is OK. Now, I think this case is about ambiguity or the perception of ambiguity. Petitioner lied on a visa application, placed him to removal proceedings because of it, sought a fraud waiver on the basis of his United States citizen father who was dead. The agency denied his waiver because it said he needed a living, qualifying relative. It did that on the basis of its own published opinion, interpreting a federal statute, which means we're talking about Chevron deference, which means all that is needed to. Does that matter? Can you start? Can you start? What I what I took Judge Heiden's question to be. Does it matter that the agency didn't identify which part of the statute was ambiguous? And does that in some way limit what what we can review in that regard? I have two answers to that. And the first is that I think the agency did sufficiently identify where the ambiguity is here because it did not simply say that it was unambiguous. I think it can be implied fairly from what the board did in matter of federalism that it was saying we can't tell just from the word is what the nature of the father. Parental relationship is supposed to do in the statute or what Congress intended towards it. It's it's it's a silence then. But why? But why would we assume that Arisa based it on the word is instead of the word citizen? I mean, I don't know that either. I'm ambiguous. Right. But based on that Arisa itself, it doesn't tell us whether they found ambiguity in the word is or they found ambiguity in the word citizen. I think that you can read that into their take on the Supreme Court's take on the statutory history, because that focuses on family unity, which is about what happens when families are separated. It's not so much when when people die that that's the explanation for why they're choosing their rationale right there. They're in within their zone of construction, if we want to call it that, or within what they can choose among. They're picking this one for those reasons. But that doesn't identify the ambiguity, does it? Not to the extent you're talking about citizenship ending at death. But I'm not aware of any precedent that would say that people aren't citizens when they're not dead. I don't think we have a bunch of of aliens buried in our cemeteries. Not to be glib, but whatever, whatever the board's intention was towards that provision. I'm sorry. I I'm interested in this in this question of why for Chevron deference, why for this two steps of Chevron Chevron? Does it matter what ground, what where the agency found ambiguity or if it clearly stated where it found it? Isn't step one that we have to analyze the statute ourselves? Yes, Your Honor. That was going to be the second part of my answer, because whether or not the agency found this, did this at step one or step two, you do step one yourselves and you do it de novo. You decide if it's ambiguous or not. And you don't defer to what the agency found or didn't find in that sense. So all we really need to look at here is whether the agency's interpretation of the statute was reasonable or if it's unambiguous. But that's basically it. Can I do a hypo? I'm wondering if under the government's argument, does the citizenship is well, not that I don't mean the citizenship in the word citizen. I mean, in the sense of the fact this case involves an alien. So let me give you this hypothetical. So I was born in the United States to two people who were both themselves United States citizens after my parents pass away. And to be clear, they're both still alive. But is the government view, the government's view that after my mother and father die, I will no longer be the child of United States citizens? Because that seems to me the implication of the argument you're making. That is not the argument that I've made. I have not made any argument about citizenship, not surviving after death. You will concede that after my mother and father die, any normal usage of the English language would still describe me as the child of the United States citizens. The agency hasn't spoken on that issue here, and I'm not comfortable speaking for it in the first instance. The argument that your honors are raising respectfully is not an exhausted issue before us. What we're talking about is whether or not a person needs to be alive to be the parent of someone who's qualifying for the fraud waiver. I'm happy to brief this issue about citizenship if you guys are, if your honors are looking for a supplemental briefing. But I'm not comfortable speaking to that in the first instance because I don't know what the client's position on it is, frankly. This isn't something I was prepared to argue. You're on mute, Toby. Apologies. Thank you. Dr. Richardson. Imagine that a woman's will leaves everything to, quote, to my son. That a will says, I leave everything to my son. Assuming that that woman had only one male child, is there any doubt in the world to whom that is referring? No. I would say no. So doesn't that mean that even after she is dead, he is still her son? Not necessarily. Let's get into this. I have a whole piece on this, and this is going to be great. Great. Ambiguity. Now, when we're talking about Chevron Step 1, we're talking about clarity of meaning, right? We're talking about did Congress unambiguously communicate a meaning when it wrote whatever it wrote? And the first principle of communication is a consensus on the meaning of terms. Now, in this case, we have one phrase, whether a person, quote, is the son of a United States citizen. Petitioners arguing that that phrase necessarily includes dead relatives because of the nature of the parent-child relationship demands that outcome. So what she's asking your honors to circumscribe there is the extent and durability of the parent-child relationship in the event that a parent dies. That is not an appropriate topic for a court of law. It's a philosophy topic. It's not something that you can elucidate through a fact. It is. It requires what you just did, an opening argument. Well, I don't want to interrupt your great piece about this, but we are a court of law. And, you know, I did try to look for other places in the law, specifically in Title VIII, where Congress refers to a parent-child relationship in the past tense and not in the sense of emancipation or something like that, but death. And one that I referenced previously is in 1154. They refer to someone who is the parent of a citizen or was a parent of a citizen who died. Now, that's going the other way. It's not saying you're no longer the son. It's saying you're no longer the parent. Now, we know that's not, you know, that's not necessarily true because you always have this bond. It's not like a spouse you can divorce. But Congress sometimes uses language like that to suggest you were related to someone who has died. And that makes me question how much we can read into, you know, the is idea that, you know, in some meaningful sense, these bonds transcend death. But is that really what Congress meant here? What are your thoughts on that? My thoughts are that it's impossible to tell. It's silent here. It's not something I don't think Congress intended to explore, like engage in a dialectical explanation of the essential nature of being a son, which is what the answer to the petitioner's question requires. I guess my point is just the fact that Congress has said is the son or is the daughter and the fact that we know someone doesn't stop being related after death doesn't necessarily mean that these benefits continue, right? In other places, Congress refers to that relationship with a was, right, in a past tense because we're speaking kind of colloquially. Yes, in some important sense, you're always the son of your father. But in other senses, you know, he was your father before he passed. That this just makes me question how much we can read into this particular usage. I agree. It's the what petitioner is asking us to read into the statute is too much because the anecdote that the Ninth Circuit relied on in Federico V. Holder to basically innovate the rule of law that says a person is always his mother's son is just that. It's an anecdote. It's not a rule of law. It's a truism. It's a belief. It's not a fact. It's not something that can be proven or disproven. It's unfalsifiable. Can I get off into the philosophy again on the vision that Judge Rushing is referring to? I'm not sure what the number is, but whatever it is, the one that says is or was. Why isn't that specification in that statute necessary? Because that statute required the parent to make the application. And so whether the parent remains a parent or whether the parent remains a citizen, it doesn't matter if the parent has to make the application. The one thing we do know is the dead person can't show up with the piece of paper. And so you had to have the past tense there. And the context tells us we needed past tense in that provision because they had to understand the scenario in which the grandparent could make the application instead of just the parent making the application. And so whatever implication that we might otherwise draw from the use of the past tense there ought not to carry much weight given that it was needed in that context, given that the parent is the one that had to actually make the application. Is that not a fair way to say even if they use the past tense there, perhaps that's not a meaningful difference? It is fair to say that. I mean, Congress has kind of been all over the place vis-a-vis the exact question in this case, which is does a parent-child relationship survive death? They use is and was all over the place because is and was are some of the most common language. So that's not – actually, I would say that's not right at all. In every instance – we have no instance in which Congress had said that you are not a parent after death or you are not a citizen after death. We have one example, and I think there's one other, 1151B, but there may be two examples in which they seem to indicate affirmatively. They need to specify that you remain a parent for this provision after death, but they need that specification for a particular reason, not sort of generically, but because they were required to make application. So they hadn't been all over the place. In fact, they seem to have included parent in every instance. Do you have any instance in which Congress specified that parent stopped at death? No. I don't think that – because they do specify when they need to say it. I don't think that's something that Congress ever intended to explore no matter what it said. It does define parent at 1101B, and the parental relationship can terminate on the basis of relinquishment or abandonment or lack of a bona fide relationship between parent and child or whatever that means. So I don't think Congress was necessarily contemplating that this – like from the baseline that this was an eternal relationship. I think that if they had meant to say that, they would have. What about 1430D where it talks about the surviving child of a parent who dies in military service? And it says that that extends, right? That's an example where they are extending it. No? Sure, and they did so explicitly, probably for a reason. I don't know the statutory history behind that. But that probably – that's going to get us – I think all of what we're discussing here is proving the point that this is an ambiguous set of language because Congress goes back and forth. It specifies it when it needs to and it doesn't when it doesn't. Can I ask you this again? I know we've talked – what word in this statute do you claim is ambiguous? I mean if you say the statute – I mean because the way I hear you saying it is, well, the statute doesn't specify whether X or Y, and that means it's ambiguous. Another way to describe it, which is I think a fair interpretation of the Ninth Circuit's decision is what the government argues is an ambiguity is just attempting to read a requirement that isn't in the text of the statute. So what language in this statute do you claim is ambiguous? The question is framed by the petitioner, which is the phrase, is the son? And I don't think it's adding a requirement of being alive when those three words I don't think can be fairly said to say a person has to be alive or dead for the noncitizen to get the benefit. Because as you see, Congress is kind of all over the place on here. Sometimes they say it survives. Sometimes they don't say anything. And I think this is just simply silent on the question because, again, as framed by the petitioner, what we're talking about is just the nature, like a metaphysical nature of a relationship. And I don't think Congress, just by using those three very common words, intended to comment on what it means to have a parent die and whether that bond continues. And I think that's the ambiguity of it. I mean, if we can move on to step two, the big elephant in the room here is that we know what the purpose of this statute is. The Ninth Circuit and petitioner also did a lot of rhetorical hand-waving to kind of avoid having to look at the purpose. But we know what the purpose is. It's been settled for half a century. This is an act of grace, an act of forgiveness towards fraudsters who, by deporting them, would break up family units comprised in part of United States citizens. Then all we're doing at step two is deciding whether or not this is a reasonable interpretation. And reasonableness just requires that it not be arbitrary and capricious or manifestly contrary to the statute. It's not arbitrary and capricious. You can see in Maddo, Federico, they were very clear what they were relying on. And it's not manifestly contrary to the statute because the language is ambiguous. And because the result that they reached is consonant with Congress's intent, which is established and the petitioner does not dispute is the actual purpose of the statute. The points of comparisons that were briefed in this case are inconclusive. They're not enough to overcome what we know to be Congress's intent here. Petitioner talks about the definition of a child. The statute doesn't say child. It says son or daughter. But it used to say child. It's fine. But again, parent is defined, spouse is defined, and spouse is defined without reference to a continuing marriage. But nobody seriously argues that marriage is eternal. So what did Congress intend by juxtaposing the marital relationship with the parental relationship? We don't know. It doesn't say. It's not clear. It's not enough to overcome what we know about the intent. Petitioner makes the analogy to the 212i waiver, the version of the fraud waiver that applies for aliens who weren't admitted when their fraud was discovered. Because there is a hardship requirement in there. And the argument is that Congress put a hardship waiver here and not over here. And Congress does that deliberately when it does it. And the respondent will concede that Congress deliberately omitted a hardship requirement. But the board didn't impose a hardship requirement. It imposed it being a live requirement. And those are not the same thing. That's a big leap between one and the other. And it's just, it's a low bar. You have to be alive to do anything, including suffer hardship, suffer, you know, enjoy the fruits of unity with your noncitizen child. I don't think that illuminates anything. It's the same. Can I ask you about what's actually at stake here? So this isn't a question, am I right, the disagreement between you and your friend on the other side is not about whether this gentleman gets a waiver. The question is whether this gentleman is able to argue that under the facts and circumstances of the case, he should get a waiver. And maybe he should. Maybe the board would decide that he shouldn't. My understanding of this is if we were to grant the petition, vacate and remand, even under the conclusion that he was even eligible, if we went that far, the BIA or the attorney general, I guess I don't know who would make this determination, could say, under all the facts and circumstances of this case, including possibly the fact that his qualifying U.S. citizen parent is dead, we don't think he should get a waiver. They could do that, right? This is a question about whether he's even eligible to have the argument heard. It's not a question about whether he's actually going to get relief. Am I right about that? You're right. This is about statutory eligibility. We have never, the board has never addressed relief as a matter of discretion. But I don't think that should give anyone comfort in just choosing, not that you would choose like a loose interpretation of the statute, but we should still be quite clear about what Congress intended. Because Congress added in the discretionary piece before and it could take it away, and we don't want to be left with a looser interpretation of the statute than what was originally intended, just because we were hoping that discretion might catch up any mistakes that we missed in the first place. Well, allow me to just sum this up a little bit. The language is ambiguous. I know that we're not all on the same page in terms of what this means or doesn't mean, and nobody was super impressed with my philosophical discussion. But the point is that Congress made different comments all over the INA. Sometimes they imposed the requirements, sometimes they don't. It's impossible to tell what they intended with regard to the nature of the parent-child relationship. But we know where it comes up because we know what Congress meant when it created the fraud waiver. And as soon as we see that, we can see that the board's interpretation is reasonable. There's nothing wrong with how it came out. Keep in mind that reasonable doesn't mean definitively correct or perfect or even something that you yourselves would have done in their place. It just has to be not arbitrary and not inconsistent with the language, and it isn't. And then you can also say that the board's interpretation ends up with a result that makes sense. The petitioner doesn't have a qualifying living United States citizen relative, so to grant him the waiver leaves us, the community of American citizens and lawful permanent residents, just with a guy who lied on his visa application. And that doesn't serve anybody's interests. So for that reason and the reason specified in the brief, we respectfully ask that you deny the petition for review. Thank you. Counsel? Briefly, Your Honor, the question was asked in many different ways by this panel. What language exactly in the relevant portion of the statute is ambiguous? And counsel for the respondent couldn't actually identify any language that is ambiguous. So if we focus on the relevant portion. Can I ask you a question about that? So our court has said that Chevron is a standard of review that is non-waivable. And you may or may not agree with that. I may or may not agree with that. But our case law is it's a standard of review. And under Chevron, the court is required at step one to determine whether there is ambiguity. And so does it matter whether the government sort of fails to identify the right ambiguity or fails to identify an ambiguity if there is one there? So I think it's the burden of the government to identify the ambiguity. But that's not what I mean. That's sort of inconsistent with calling Chevron a standard of review. Right. The point of it is, is that if it's a standard of review, the government cannot waive Chevron. Just like they cannot waive abuse of discretion or some other standard of review. And so we're required at step one to determine whether there's ambiguity. I mean, I'm not sure about this. That's what I'm asking. This isn't like a lecture. This is like, I'm not sure what to do because I take your colleague to basically say, you know, there's some ambiguity, but I'm not exactly identifying what it is. But I sort of wonder whether that matters. Your Honor is correct in that it's the job of this court to see, based on the plain reading, the clear meaning of the words in the statute, whether there is a portion that is silent or ambiguous. But I do think it's telling that government counsel and government's position as a whole is that there's not something that's actually identified for purposes of ambiguity. And if anything, I think there are some attempts here, quite a few actually, to introduce ambiguity to a statute that is clear on its face. This petitioner is the son of his U.S. citizen father. And so as an example, again, to introduce ambiguity, I go to counsel's point about focusing on the purpose of the statute. Your Honor, this ignores what Congress specifically did in 1981 when Congress changed the 1227A1H waiver from a mandatory to a discretionary waiver. So now it's not this court's job to consider the purpose, and going back to the Errico case, whether a purpose of family unity is supported by the insertion of a living qualifying relative. And this goes to the question Judge Heitens had asked earlier as well. All this petitioner is asking for is the opportunity to pursue the waiver. If the petition for review is granted, and he finds himself before immigration court once more, it is solely the job of the immigration judge to assess, hey, is the purpose or one of the purposes of this waiver satisfied when you, for example, as in this case, have a qualifying relative who happened to have passed away? And I'm not arguing that he's automatically going to be granted relief. The absence of a living qualifying relative may be a factor against the favorable exercise of discretion. All this petitioner is requesting is this court to find that he is the son of a U.S. citizen father, even though that parent passed away, and he should be able to put on a case where all of the discretionary factors are considered. And briefly, just going to, again, some of the cases that are mentioned in Matter of Fedoriso. I think the Ninth Circuit in Fedoriso v. Holder, when the Ninth Circuit overturned Matter of Fedoriso in 2010, did a good job systematically going through the cases, Myung from 1972, Kalizik from 1981, and even going into Virk and Trong, these post-Chevron cases from 2002 and 2018, respectively, that this is why we decided these cases the way we did at that time. Especially in the pre-Chevron cases, the Court of Appeals did focus on purpose. This court does not focus on purpose, need not focus on purpose, and the statute is clear on its face. Thank you, Your Honors. Thank you, Counsel. As you probably know, we would come down and greet you. We can't do that under these circumstances, but very much appreciate both of your arguments and your willingness to appear and try to help us out here. We'll hope to see you in person before too long.
judges: Julius N. Richardson, Allison J. Rushing, Toby J. Heytens